
September 28, 2015

The Texas Constitution and sections 402.042 and 402.043 of the Government Code grant the attorney general authority to issue attorney general opinions. An attorney general opinion is a written interpretation of existing law. The development of an attorney general opinion is an involved and thorough process involving many layers of comprehensive review. Attorney general opinions do not necessarily reflect the attorney general's personal views, nor does the attorney general in any way "rule" on what the law should say. As have those that have come before it, this administration strives to craft opinions with the greatest level of legal accuracy and without any hint of impropriety.

By its very nature, the attorney general opinion process invites a variety of legal issues to be brought before our office for analysis and review. The questions asked are outside the scope of this office's control, and some of the questions to be addressed may raise actual or perceived conflicts of interest for the Attorney General and his staff. Consistent with applicable statutes and rules, staff members involved in the opinion process must recuse themselves from matters in which there may exist an actual or perceived conflict of interest. Accordingly, pursuant to section 402.001 of the Government Code, I delegate my signature authority in the attorney general opinion process to the First Assistant Attorney General, Charles E. Roy, for those opinions in which I may have an actual or perceived conflict of interest or in which my involvement gives even the appearance of impropriety. Any such opinion signed by the First Assistant under this delegation carries the full force of an attorney general opinion.

Very truly yours,

KEN PAXTON
Attorney General of Texas



December 21, 2015

The Honorable Glenn Hegar
Texas Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Dear Comptroller Hegar:

In the process of reviewing this matter, this office concludes there could be an actual or perceived conflict of interest such that the Attorney General has recused himself from any participation on the matter. Accordingly, pursuant to Government Code section 402.001 and the authority delegation issued by the Attorney General on September 28, 2015, the First Assistant Attorney General will sign this opinion. Any such recusal is intended to go beyond the letter and spirit of the governing law and rules in order to avoid even the appearance of impropriety and to demonstrate our ongoing commitment to the highest ethical standards.

Very Truly Yours,

Charles E. Roy
First Assistant Attorney General

CER:lly



December 21, 2015

The Honorable Glenn Hegar
Texas Comptroller of Public Accounts
Post Office Box 13528
Austin, Texas 78711-3528

Opinion No. KP-0048

Re: Effect of the Governor's vetoes of the
General Appropriations Act (RQ-0047-KP)

Dear Comptroller Hegar:

.You ask for an opinion "on the effect of certain parts of the Governor's veto proclamation for House Bill 1, the General Appropriations Act," enacted during the Eighty-fourth Legislature.[1] Request Letter at 1. Article 4, section 14 of the Texas Constitution authorizes the Governor to veto items of appropriation:

> If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect.

TEX. CONST. art. IV, § 14.

The Texas Supreme Court has twice taken the opportunity to construe this provision. In *Fulmore v. Lane*, 140 S.W. 405 (Tex. 1911), the Court addressed the Thirty-second Legislature's appropriations bill, wherein it appropriated to the Attorney General's department "the sum of eighty-three thousand and one hundred and sixty ($83,160) dollars, to be expended during the two fiscal years ending August 31, 1912, and August 31, 1913." *Id.* at 407. Below this general statement in the appropriations bill, the sum of $83,160 was divided and placed in separate columns, "one for $41,580 available for the year ending August 31, 1912, and a like sum for the year ending August 31, 1913." *Id.* at 410. In his veto message, the Governor "vetoed the lump sum of $83,160 appropriated to the Attorney General's department" and further explained that "[b]y striking out the lump appropriation and the words describing the same, and the appropriation of $41,580 for the second year, the sum of $41,580 is left subject to the use of the Attorney General[.]" *Id.* at 408. Contrary to the argument that the Legislature made only one item of appropriation in the sum of $83,160, the Court held that "there were two items of appropriation

---

[1] Letter from Honorable Glenn Hegar, Tex. Comptroller of Pub. Accounts, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Aug. 26, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs (hereinafter "Request Letter"); *see* General Appropriations Act, 84th Leg., R.S., ch. 1281, § 1, 2015 Tex. Gen. Laws 4343 (hereinafter the "Act"); Veto Message of Gov. Abbott, Tex. H.B. 1, 84th Leg., R.S. (2015) (located at 2015 Tex. Gen. Laws 5298–5307) (hereinafter "Proclamation").

for the Attorney General's department." *Id.* at 411. Thus, the Governor lawfully vetoed the appropriation for the second year but "left available the item of $41,580 appropriated for the first fiscal year." *Id.* With regard to the Governor's striking of the lump sum of $83,160, the Court explained that such clause "was surplusage and its elimination in no manner affected either of the two items of appropriation." *Id.*

In *Jessen Associates v. Bullock*, 531 S.W.2d 593 (Tex. 1975) (orig. proceeding), the Court addressed the Governor's attempt to veto a rider to the appropriations bill that authorized the construction of certain enumerated projects by the Board of Regents of the University of Texas System. *Id.* at 596–97. In analyzing whether the specific rider in question was an "item of appropriation" and thereby subject to the Governor's veto, the Court explained that "if the provision which the Governor attempted to veto . . . is merely language qualifying an appropriation, or directing its uses, then the veto is of no effect." *Id.* at 598. On the other hand, "[w]here a certain provision designates a specified purpose and the amount to be used therefor, it is an item of appropriation even though it may be included in a larger, more general item." *Id.* at 599. Concluding that the rider did not itself set aside any funds, the Court held that the "Governor . . . exceeded the power granted to him . . . in attempting to veto the rider." *Id.* at 600.

While the Court in *Jessen* concluded that the particular rider in question was not an appropriation, opinions from prior attorneys general have emphasized that riders are not immune from the Governor's veto if they include "items of appropriation." *See* Tex. Att'y Gen. Op. No. O-3685 (1941) at 3 ("a rider of this type constitutes an item of appropriation . . . and is subject to the veto power of the Chief Executive"). "The Governor has no authority to veto a rider in an appropriation bill *unless* it is in itself an item of appropriation." Tex. Att'y Gen. Op. No. M-1199 (1972) at 2 (emphasis added). "No particular form, or method, or verbiage, is required to constitute an item of appropriation." Tex. Att'y Gen Op. No. O-3685 (1941) at 2. It is with these authorities and principles in mind that we consider your specific questions concerning the Governor's vetoes of the Eighty-fourth Legislature's General Appropriations Act.

## I.      Texas Facilities Commission

Your first and second sets of questions concern the Governor's veto of provisions in the Act relating to certain funds for the Facilities Commission. Request Letter at 5–7. In particular, for the fiscal year ending August 31, 2016, the Act allocates to the Facilities Commission $983,665,000 for construction of buildings and facilities, listing seven specific projects and a corresponding amount for each. *See* Act, art. I-42 at 4397. The Governor struck three of those projects and their corresponding amounts from the Act: $132,000,000 for the G. J. Sutton Building Replacement, $26,000,000 for the Elias Ramirez State Office Building – New Parking Garage, and $57,995,000 for acquisition and relocation of the Department of Motor Vehicles Headquarters. Proclamation at 5300–01; Act, arts. I-41 & I-42 at 4396–97 (3.e.(5)–(7)). The Act states that these amounts "shall be expended only for the purposes shown and are not available for expenditure for other purposes." Act, art. I-41 at 4396 (3.). These three allocations therefore set aside funds for a specified purpose and are items of appropriation. *See Jessen*, 531 S.W.2d at 599. The Governor's veto of said items results in those funds not being appropriated to the Facilities Commission. *See* TEX. CONST. art. IV, § 14 ("no item so objected to shall take effect").

· The Legislature did not allocate separate funds for these projects for the fiscal year ending August 31, 2017; however, the Act includes, and the Governor struck, the unexpended balance appropriation for each of these projects.[2] Act, art. I-42 at 4397 (4.); Proclamation at 5301. Because the Governor's veto nullifies the appropriations for the fiscal year ending August 31, 2016, no unexpended balances of the appropriations would occur for the following fiscal year, and the Governor's striking of these appropriations is likely an acknowledgment of that fact. *See* Tex. Att'y Gen. Op. No. MW-51 (1979) at 6 (concluding that two provisions appropriating unspent balances were items of appropriation subject to the Governor's veto).

As you note, these specific items of appropriation vetoed by the Governor were included as part of larger sums allocated earlier in the Act. *See* Request Letter at 6. The Texas Supreme Court explained in *Jessen* that "[w]here a certain provision designates a specified purpose and the amount to be used therefor, it is an item of appropriation even though it may be included in a larger, more general item." *Jessen*, 531 S.W.2d at 599. The Act allocates $1,288,649,445 to the Facilities Commission. Act, art. I-39 at 4394. The Act then divides this sum into four "Goals," which each include one or more "Strategies." *Id.* Goal A addresses "Facilities Construction and Leasing," and Strategy A.2.1. allocates $988,291,706 for Facilities Design and Construction. *Id.* You question whether that Strategy should be reduced by the amount of the vetoed appropriations. Request Letter at 6. Language in the Act indicates that at least two of the amounts vetoed were included in the previously articulated Strategy A.2.1. Act, art. I-46 at 4401 (20., 22.) (stating that included in the amounts appropriated in Strategy A.2.1 were the appropriations for the Department of Motor Vehicles Headquarters and the G.J. Sutton Building Replacement). And both the amount of funds allocated to Strategy A.2.1 and the Strategy's stated purpose indicate that it likely includes the specific funds appropriated for the three projects that were vetoed by the Governor.[3] Act, art. I-39 at 4394. Regardless of which Strategy the Legislature intended for the specific appropriations at issue, however, the effect of the Governor's veto is to reduce by $215,995,000 the funds appropriated to the Facilities Commission by the Act.

With regard to vetoes, the Governor's "authority is purely negative." *Fulmore*, 140 S.W. at 412. An effective veto nullifies the setting aside of an amount of funds for a specific purpose. If additional funds apart from what was vetoed by the Governor are available, and if authority outside of the veto permits expenditure of those funds for a given purpose, an agency is likely authorized to spend its other funds accordingly. In this particular instance, however, the Act provides that the funds appropriated to the Facilities Commission for capital budget items "shall be expended only for the purposes shown." Act, art. I-41 at 4396 (3.). Because the three purposes at issue are now struck from the Act by virtue of the Governor's veto, funds appropriated to the

---

[2]*See* Act, art. IX-26 at 5191 (Sec. 6.01) ("A reference in this Act to 'unexpended balance' or 'UB' is a reference to the unobligated balance of an amount appropriated by this Act for the fiscal year ending August 31, 2016, unless another meaning is clearly indicated.").

[3]The total sum of appropriations for the seven projects listed is $983,665,000, *see* Act, art. I-42 at 4397 (3.e.(7)), and Strategy A.2.1. is the only Facilities Commission Strategy that was allocated funds that equal or exceed that amount. Act, art. I-39 at 4394 (A.).

Facilities Commission by the Act for capital budget items may not be used for the three vetoed projects.

You also ask about the Governor's veto of Riders 20 and 22. *See* Request Letter at 6. These Riders are duplicative of the appropriations vetoed by the Governor for acquisition and relocation of the Department of Motor Vehicles Headquarters and for the G. J. Sutton Building Replacement. *See, e.g.*, Act, art. I-46 at 4401 (20.) ("Included in the amounts appropriated to the Texas Facilities Commission, in Strategy A.2.1, Facilities Design and Construction, is $57,995,000 in Revenue Bond Proceeds in fiscal year 2016 for acquisition and relocation to a new headquarters space for the Texas Department of Motor Vehicles[.]"). Upon his decision to veto those items, Riders 20 and 22 became surplusage, and the striking of these paragraphs simply reinforces the veto of the capital budget items and corresponding reduction of funds discussed above.

## II.      Texas Department of State Health Services

Your third set of questions relates to the Governor's veto of funds for the Department of State Health Services ("Department"). Request Letter at 7–8. Under Strategy B.2.3., the Act allocates $127,656,512 for fiscal year 2016 and $127,656,510 for fiscal year 2017, for community mental health crisis services. Act, art. II-48 at 4499 (B.2.3). The Act subsequently provides that "[o]ut of funds appropriated above in Strategy B.2.3 . . . , the Department . . . shall allocate $1,743,000 in each fiscal year of the 2016–17 biennium in General Revenue to be used *only for* the purpose of conducting a jail-based restoration of competency pilot program." Act, art. II-72 at 4523 (70.) (emphasis added). From this language, the Governor struck "in each fiscal year." Proclamation at 5301.

Similar to the appropriation addressed by the Texas Supreme Court in *Fulmore*, the clear intent of the Act is to set aside $1,743,000 for fiscal year 2016 and $1,743,000 for fiscal year 2017 to be used solely for a jail-based restoration of competency pilot program. *See Fulmore*, 140 S.W. at 407 (addressing an appropriations act stating "there is hereby appropriated the sum of eighty-three thousand and one hundred and sixty ($83,160.00) dollars, to be expended during the two fiscal years ending August 31st, 1912, and August 31st, 1913"). The language of the Act therefore sets aside two separate amounts of funds for a specific purpose, or establishes "two items of appropriation." *Id.* at 410. The Governor vetoed one of those items, the effect of which is to reduce the Department's appropriated funds by $1,743,000 for the biennium.

You ask from which fiscal year that amount should be eliminated. Request Letter at 8. The Texas Supreme Court has explained that in determining the effect of a veto, we review the Governor's veto message as a whole. *Fulmore*, 140 S.W. at 411. By striking the language "each fiscal year" and explaining that he intended to veto "one year of this appropriation," it is clear that the Governor intended to spread the $1,743,000 item of appropriation over the biennium. Proclamation at 5301. Thus, the effect of the veto is to strike the appropriation for fiscal year 2017, while preserving the fiscal year 2016 appropriation. The Act authorizes any unexpended balance remaining on August 31, 2016, to be "appropriated for the same purposes in fiscal year 2017." Act, art. II-65 at 4516 (39.). Because the Act explains that the funds allocated for this program were included in Strategy B.2.3, a proper accounting would reduce Strategy B.2.3 by

$1,743,000. Act, art. II-72 at 4523 (70.); Proclamation at 5301. If additional funds apart from the $1,743,000 vetoed by the Governor are available, and if authority outside of the veto permits expenditure of those funds for a jail-based restoration of competency pilot program, the Department is likely authorized to spend its other funds accordingly.[4]

### III.    Texas Education Agency

Your fourth set of questions asks about the Governor's veto of the following provision:

> Out of funds appropriated above, the Texas Education Agency shall allocate funds for the purpose of paying membership fees to the Southern Regional Education Board, estimated to be $193,000 per fiscal year.

Act, art. III-18 at 4609 (61.); Proclamation at 5302; Request Letter at 8. This provision sets aside funds — an estimated $193,000 per fiscal year — for the purpose of paying membership fees to a particular organization. The fact that the provision does not articulate a fixed sum does not preclude this from being an item of appropriation. As an opinion from this office previously concluded, a provision "may constitute a sufficient appropriation although it does not name a certain sum or a maximum sum." Tex. Att'y Gen. Op. No. O-3685 (1941) at 2 (opining that an uncertain sum appropriated for salaries, travel and other necessary expenses was an item of appropriation subject to the Governor's veto). Because the provision sets aside funds for a particular purpose, it constitutes an item of appropriation, and the Governor's veto of this item has the effect of reducing the agency's lump-sum appropriation by $193,000 each fiscal year.

The provision does not identify from which Strategy the appropriation is derived, so a determination as to which Strategy should be reduced by this veto will need to be made by the Comptroller in consultation with the Texas Education Agency and the Legislative Budget Board. If additional funds apart from the $193,000 per fiscal year vetoed by the Governor are available, and if authority outside of the veto permits expenditure of those funds for membership fees to the Southern Regional Education Board, the Texas Education Agency is likely authorized to spend its other funds accordingly.

### IV.    Texas Water Development Board

Your fifth set of questions concerns the Governor's striking of funds allocated to the Water Development Board. Request Letter at 9. In particular, the Act provides for and the Governor struck the following provision:

> Included in amounts appropriated above in Strategy A.3.1 Water Conservation and Assistance, is $1,000,000 in fiscal year 2016 from General Revenue for the purpose of providing grants to water

---

[4]Unlike the Governor's veto of the Facilities Commission's capital budget items discussed above, the Governor's veto of funds appropriated to the Department does not itself impact the use of any of the Department's other available funds.

conservation education groups. The Water Development Board shall award the grants through a competitive process, which may require grant applicants to provide private matching funds. Any unexpended balances as of August 31, 2016 in *funds appropriated for this purpose* are appropriated for the same purpose in the fiscal year beginning September 1, 2016.

Act, art. VI-59 at 5030 (20.) (emphasis added); Proclamation at 5303. The clear intent of this provision is to set aside $1,000,000 for the purpose of providing grants to water conservation education groups. It is therefore an item of appropriation subject to the Governor's veto. The effect of the Governor's veto is to reduce by $1,000,000 the total sum appropriated to the Water Development Board for fiscal year 2016. Because the Governor's veto nullifies the appropriation for the 2016 fiscal year, no unexpended balance of the appropriation will occur during the following year. The Act explains that the funds allocated for these grants were included in Strategy A.3.1, and a proper accounting would thereby reduce Strategy A.3.1 by $1,000,000. Act, art. VI-59 at 5030 (20.). If additional funds apart from the $1,000,000 vetoed by the Governor are available, and if authority outside of the veto allows the Board to provide grants to water conservation education groups, the Board is likely authorized to spend its other funds accordingly.

## V.     State Universities and Colleges

You next ask about the Governor's striking of funds for four state universities and one community college. Request Letter at 9–14. In particular, the Act provides for and the Governor struck the following allocations: (1) $2,500,000 for each fiscal year to the University of Texas at Austin for identity theft and security; (2) $137,577 for each fiscal year to Texas A&M University for an international law summer course; (3) $1,000,000 for each fiscal year to Tarleton State University for the Center for Anti-Fraud, Waste, and Abuse; (4) $500,000 for each fiscal year to Stephen F. Austin State University for the Waters of East Texas Center; and (5) $100,000 for each fiscal year to Del Mar College for a maritime museum. Act, art. III-66 at 4657 (C.2.8.); art. III-87 at 4678 (C.1.1); art. III-94 at 4685 (C.3.2); art. III-131 at 4722 (C.3.4); art. III-200 at 4791 (O.2.1.).

Regardless of whether the allocations are labeled as informational, Strategies, or riders, if they set aside funds for a specific purpose, they are "items of appropriation." In each of these allocations, the Legislature provides for an amount of money to be set aside for a specific purpose.[5] These five allocations are therefore items of appropriation. The Governor's vetoes are valid and reduce each institution's lump-sum appropriation by the corresponding amount struck for each

---

[5]*See* Act, art. III-68 at 4659 (9.) ("Amounts appropriated above include $5,000,000 in General Revenue for the 2016-17 biennium to provide research and education in the areas of identity management, protection, security, and privacy, and to develop solutions to identity problems for businesses, adults, and children at The Center for Identity at the University of Texas at Austin."); art. III-88 at 4679 (4.) (providing that the funds allocated to Texas A&M University "will be used for the International Summer Course"); art. III-95 at 4686 (6.) (providing that the funds allocated to Tartleton State University "will be used for the Center for Anti-Fraud, Waste, and Abuse"); art. III-132 at 4723 (4.) (providing that the funds allocated to Stephen F. Austin State University "will be used for the Waters of East Texas Center"); art. III-207 at 4798 (26.) (providing that the funds allocated to Del Mar College "shall be used for a maritime museum").

institution. If additional funds apart from those vetoed by the Governor are available, and if authority outside of the veto allows the educational institutions to spend funds in the manner provided, the institutions are likely authorized to spend their other funds accordingly.

## VI.      Texas State Securities Board

Your final set of questions concerns funds allocated to the Securities Board. Request Letter at 15. The Act provides, and the Governor struck, the following language:

> Amounts appropriated above include $557,352 in fiscal year 2016 and $636,688 in fiscal year 2017 in General Revenue for the purpose of employee merit salary increases contingent upon House Bill 2493, or similar legislation relating to the classification of the agency as a Self-Directed and Semi-Independent agency, not being enacted.

Act, art. VIII-55 at 5148 (3.); Proclamation at 5304. This provision sets aside $557,352 for fiscal year 2016 and $636,688 for fiscal year 2017 for the purpose of employee salary increases, and it therefore constitutes two items of appropriation subject to the Governor's veto. The appropriations were contingent upon House Bill 2493 or similar legislation not being enacted, which ended up being the case.

The Governor's Proclamation message in conjunction with this veto states, "[t]his veto deletes a contingent rider for a bill that did not pass." Proclamation at 5304. Briefing submitted to this office on behalf of the Securities Board notes that the Governor vetoed a number of appropriation riders that were contingent on the passage of other legislation that failed to pass.[6] With regard to these other vetoes, the Governor's Proclamation message included the same explanatory statement provided for the veto of Securities Board funds. Each of the other vetoes, however, had no meaningful effect on the agency or its appropriations, as the appropriations were contingent on the passage of a bill that failed, so the appropriations would not have become effective regardless of the Governor's veto. In this instance, on the other hand, the Securities Board appropriations were contingent on a bill failing, which did occur, so the appropriations would have been effective but for the Governor's veto. The briefing suggests that in every other instance when the Governor intended to affirmatively veto appropriations, the Governor struck the appropriations language and included an explanation as to why the veto occurred. Brief at 6–8. While this may be the case, we cannot ignore the clearest intent of the Governor's veto, which is his striking of the appropriation language and which results in the total sum appropriated to the Securities Board being reduced by the amounts struck.

The vetoed provision does not state from which of the Securities Board Strategies the appropriated funds derive. According to information provided by the Securities Board, however, the Legislative Budget Board has explained how the vetoed funds were apportioned among the Board's Strategies, and this could provide a method to account for the vetoed funds. *See* Securities

---

[6]*See* Letter from Beth Ann Blackwood, Chair, Tex. State Securities Bd., to Honorable Ken Paxton, Tex. Att'y Gen. at 3 (Sept. 24, 2015) (on file with the Op. Comm.) (hereinafter "Securities Board Brief").

Board Brief at 9. Regardless of which Strategies the Legislature intended for the specific appropriations at issue, however, the effect of the Governor's veto is to reduce by $557,352 in fiscal year 2016 and $636,688 in fiscal year 2017 the funds appropriated to the Securities Board by the Act. If additional funds apart from those vetoed by the Governor are available, and if authority outside of the veto permits expenditure of those funds for employee merit salary increases, the Board is likely authorized to spend its other funds accordingly.

# S U M M A R Y

Article 4, section 14 of the Texas Constitution authorizes the Governor to veto "items of appropriation." The Texas Supreme Court has explained that "where a certain provision designates a specified purpose and the amount to be used therefor, it is an item of appropriation even though it may be included in a larger, more general item." The provisions vetoed by the Governor each designate a specific purpose and the amount to be used therefor, and they are items of appropriation subject to the Governor's veto.

The Governor's authority to veto items of appropriation is purely negative. An effective veto nullifies the setting aside of an amount of funds for a specific purpose. If additional funds apart from what was vetoed by the Governor are available, and if authority outside of the vetoed language permits expenditure of those funds for a given purpose, an entity is likely authorized to spend its other funds accordingly.

Very truly yours,

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee
Assistant Attorney General